**AMERICAN PETROFINA, INC., Appellant,**

v.

**DORCHESTER GAS CORPORATION, Appellee.**

**No. 05–84–00187–CV.**

Court of Appeals of Texas, Dallas.

Jan. 4, 1985.

Rehearing Denied Feb. 22, 1985.

Nichols, Merriman, Patterson & Allison, P.C., Longview, for appellant.

Daniel Tsevat, Dallas, for appellee.

Before STEPHENS, WHITHAM and DE-VANY, JJ.

WHITHAM, Justice.

The principal issues are whether appellant, American Petrofina, Inc., is entitled to contractual indemnity from appellee, Dorchester Gas Corporation, for the amount paid by Fina in settlement of a personal injury claim and whether the amount paid was reasonable. In a bench trial, the trial court rendered a take nothing judgment against Fina. We conclude (a) that Fina is entitled to indemnity for the amount paid in settlement of the claim, (b) that the trial court erred in concluding that the amount paid was unreasonable, and (c) that Fina is entitled to indemnity for its attorney's fees and expenses. Accordingly, we reverse and render.

Fina sold a refinery to Dorchester. The sales agreement contained the following indemnity clause:

> [Dorchester] shall indemnify, defend and hold harmless [Fina] against all claims, actions, demands, losses or liabilities arising from the use or the operation of the Properties or arising under or relating to any lease, contract, license or other agreement assigned to and assumed by [Dorchester] and accruing from and after the Effective Date.

The effective date was October 31, 1977. On July 21, 1978, Don Rhea, an employee of Dorchester, was injured by hot oil escaping from a double piston steam pump and an ensuing fire while working on the steam pump in the course and scope of his employment at the refinery. On July 21, 1978, Fina had no ownership interest in the refinery nor was it engaged in the use or operation of the refinery. As of July 21, 1978, Dorchester was a subscriber under the Texas Workers' Compensation Act, TEX.REV.CIV.STAT.ANN. arts. 8306–8309i; (Vernon 1967 & Vernon Supp.1984). Dorchester's workers' compensation carrier paid Rhea $23,042.21 for total and permanent disability, $9,373.45 for loss of time, and $73,306.58 for medical expenses. On February 27, 1980, Rhea commenced an action against Fina and others in the United States District Court for the Eastern District of Texas, Marshall Division. Rhea's complaint alleged that Fina was liable under the following theories:

1. Strict Products Liability: Fina sold Dorchester, Rhea's employer, a defective and unreasonably dangerous steam pump;

2. Negligence: The sale of the defective steam pump constituted negligence.

3. Breach of Contract and Breach of Express and Implied Warranties: Rhea was a third party beneficiary of the sales agreement, and Fina's breach of contract and breach of express and implied warranties were each a proximate cause of his injuries; and

4. Gross Negligence: Fina's conduct constituted gross negligence.

Rhea's complaint alleged actual and punitive damages in the sum of six million dollars. On February 24, 1982, a motion for leave to file third party complaint was filed by Fina in the Rhea action. On March 10, 1982, the court denied Fina's motion to join Dorchester in the Rhea action. Jury selection in Rhea's action commenced March 15, 1982. Trial on the merits began March 17, 1982. Fina was the only remaining defendant. During jury deliberations a settlement was reached whereby Rhea and the compensation carrier received three hundred thousand dollars in settlement of all claims arising out of the occurrence in question. The settlement took place on March 18, 1982, and was approved by the court.

On August 13, 1981, Rhea and the compensation carrier offered to settle for $350,000.00. On March 1, 1982, Fina's attorney telephoned Dorchester's general counsel and advised him of this offer of settlement and requested that Dorchester participate in the settlement. Dorchester's general counsel declined to do so on the basis that the indemnity clause in the sales agreement did not apply because Dorchester was a subscriber to the Workers' Compensation Act. Therefore, the present case centers on article 8306, section 3(d) which provides:

If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee, or by the representatives or beneficiaries of such deceased employee, or by the association for the joint use and benefit of itself and such employee or such representatives or beneficiaries, against a person other than the subscriber, as provided in Section 6a, Article 8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber, his agent, servant or employee, shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber, his agent, servant or employee, have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death.

### Dorchester's Liability for Contractual Indemnity.

█ Pertinent to the inquiry in the present case is the provision in article 8306, section 3(d) that "the subscriber ... shall have no liability to reimburse or hold ... harmless on such judgment or settlement ... in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death." In its conclusion of law number eight, the trial court concluded that "[t]he indemnification provision of the Agreement is insufficient to cover the claims made by [Rhea] against Fina." In its first point of error, Fina contends that the trial court's conclusion of law number eight is contrary to Texas law. Thus, we reach the question whether the indemnity clause in the agreement was "a written agreement expressly assuming [Fina's] liability, executed by the subscriber [Dorchester] prior to [Rhea's] injury ..." within the meaning of that language used in article 8306, section 3(d). It is undisputed that the indemnity clause was in writing and executed by Dorchester prior to Rhea's injury. Thus, we must decide whether Dorchester expressly assumed Fina's liability. In deciding this question we must determine whether Dorchester's obligation of indemnity is expressed in clear and unequivocal terms.

In *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208 (Tex.1980), the court identified a general rule as follows:

> Over the last three decades, the trend of Texas case law has been progressively stricter in applying the rule that a contract of indemnity will not protect an indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed in *clear and unequivocal terms.*

603 S.W.2d at 211 (citations omitted) (emphasis in original). The court in *Eastman Kodak* then discussed whether the "clear and unequivocal" rule applies "when the contract provides for indemnity against injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality." The court in *Eastman Kodak* concluded that "agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality" was not a true exception to the general rule:

> But in reality is only an application of the general rule, for when indemnity is *clearly* expressed with reference to specific premises or instrumentalities the indemnitor necessarily knows that he is assuming full responsibility for losses in connection with those particular premises or instrumentalities, regardless of whose negligence may cause the losses.

603 S.W.2d at 212 (emphasis in original). At oral argument, Dorchester conceded that, at the time Rhea was injured, Dorchester was using the steam pump in the operation of the refinery. We conclude, therefore, that Rhea's claim arose "from the use or the operation of the Properties" as that phrase is used in the indemnity clause. Moreover, Dorchester admits that the refinery is a "specific instrumentality" as that term is used in *Eastman Kodak* because Dorchester tells us in its brief that the sales agreement "does refer to the Refinery which is a '*specified instrumentality,*' but Dorchester's assumption of the obligation to indemnify Fina only arises at the time of Dorchester's use or operation of the Refinery." (emphasis added). Indeed, Rhea suffered his injuries almost nine months after Fina's operation of the "particular premises or instrumentalities" (the refinery) had ceased and at a time when the refinery was solely the "particular premises or [instrumentality]" of Dorchester. We conclude, therefore, that Dorchester knew that it was "assuming full responsibility for losses in connection with those particular premises or instrumentalities (the refinery), regardless of whose negligence may cause the loss." 603 S.W.2d at 212.

It follows, and we so hold, that the sales agreement clearly and unequivocally provides for indemnity against injuries suffered by Rhea at the time Dorchester was using the steam pump in the operation of the refinery so as to constitute "a written agreement expressly assuming [Fina's] liability" within the meaning of article 8306, section 3(d). We conclude, therefore, that the trial court erred in concluding as a matter of law that "[t]he indemnification provision of the Agreement is insufficient to cover the claims made by [Rhea] against Fina." Accordingly, we find no merit in Dorchester's contention that, as a subscriber to the Workers' Compensation Act, it had no liability under the indemnity clause for Rhea's injury in the course and scope of his employment. Consequently, we must sustain Fina's first point.

### The Reasonableness of the Settlement.

■ In its second point of error, Fina challenges the trial court's conclusion of law number seven that "Fina's settlement with [Rhea] was unreasonable." Fina argues that the evidence conclusively establishes that Fina's settlement in the sum of $300,000 was reasonable. We treat Fina's second point as a "legally insufficient" point. A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, the appellate court must consider only the evidence and the inferences tending to sup-

port the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

At trial, Fina established by the testimony of its attorney that the $300,000.00 settlement was reasonable. Dorchester offered no evidence that the $300,000.00 settlement was not a reasonable settlement. Dorchester offered no evidence of what amount would have been a reasonable settlement. Fina also established by the testimony of its attorney that it had incurred reasonable and necessary attorney's fees and expenses in the defense of Rhea's action in the amount of $19,489.73. Dorchester offered no evidence that the $19,489.73 was not a reasonable amount of attorney's fees and expenses. Dorchester offered no evidence of what amount would have been a reasonable amount of attorney's fees and expenses.

■ Dorchester does, however, advance two arguments in support of the trial court's conclusion that the settlement was unreasonable. First, Dorchester argues that Fina should have declined to settle and pursued in the trial court and in the United States Court of Appeals for the Fifth Circuit Fina's contention that Fina "was not a 'seller' as defined by the Restatement (Second) of Torts." Dorchester does not tell us in its brief why Fina was not a "seller" or advance any argument or authorities to support its contention that Fina should have fought to the bitter end over Fina's position that it "was not a 'seller' as defined by the Restatement (Second) of Torts." Consequently, we conclude that Dorchester's first argument does not constitute or identify any evidence of probative value to support the trial court's conclusion that "Fina's settlement with the [Rheas] was unreasonable."

■ Dorchester's second argument in support of the trial court's conclusion is based on Fina's attorney-witness' description of the United States District Court for the Eastern District of Texas at Marshall as "the most liberal forum in the State of Texas" and the fact that Fina failed to seek dismissal of Rhea's action in that "most liberal forum" because of lack of jurisdiction. Although a Delaware corporation, Fina stipulated in the present case that its principal place of business at the time the Rhea action was filed was in Dallas, Texas. Thus, Dorchester points to lack of diversity jurisdiction because Fina's principal place of business was in Dallas, Texas. 28 U.S. C.A. § 1332(c) (1966). Dorchester insists, therefore, that "Fina should have filed a motion to dismiss [Rhea's] complaint for want of subject matter jurisdiction and the case should have been tried in state court where a lower verdict (and a lower settlement) would have been more likely." Dorchester grounds its position on the proposition expressed in C. WRIGHT, LAW OF THE FEDERAL COURTS, § 7 at 17–18 (3rd Ed.1976):

> "But what if the parties fail to raise any jurisdictional question? The rule is that the parties cannot confer on a federal court jurisdiction that has not been vested in that court by the Constitution and Congress. The parties cannot waive lack of jurisdiction either by express consent, or by conduct, nor even by estoppel. The court, whether trial or appellate, is obligated to notice want of jurisdiction on its own motion...."

Dorchester's argument must have been persuasive to the trial court for in its finding of fact number seven it found that "[i]t is common knowledge among experienced attorney litigators in Texas that the U.S. District Court for the Eastern District of Texas-Marshall Division is more liberal than state civil district courts sitting in Dallas County, Texas in awards rendered on plaintiff's verdicts." Nevertheless, we decline to enter the thicket of forum shopping or to determine which of all the forums in Texas is the most liberal—by any standard of measurement. Rather, we

look to the nature of the relief sought by Fina.

Fina asserts that the present case is one for contractual indemnity under the terms and provisions of the sales agreement. Dorchester contends that the present case is one "seeking indemnity for a judgment entered against Fina in federal court based upon an indemnification provision of an agreement between Fina and Dorchester." We conclude that Dorchester misreads the record in Rhea's action. In the Rhea action, there was no judgment as such for which Fina could be indemnified. Rather, there was only an order of dismissal with prejudice upon advice to the court that the case had been settled. Consequently, we agree with Fina that the present case is one seeking contractual indemnity rather than one seeking indemnity for a judgment entered against Fina. Therefore, we conclude that Dorchester's second argument does not constitute or identify any evidence of probative value to support the trial court's conclusion that "Fina's settlement with the [Rheas] was unreasonable."

Accordingly, we must sustain Fina's "no evidence" second point and reverse and render. Dorchester does not separately challenge Fina's right to recover reasonable attorney's fees and expenses under the indemnity clause. Therefore, we do not reach the question whether Fina may recover its reasonable attorney's fees and expenses incurred in a forum without jurisdiction. Consequently, we decline to affirm the trial court's judgment insofar as it denies Fina's recovery for reasonable attorney's fees and expenses.

## Notice and Estoppel.

■ In addition to other arguments advanced in support of the trial court's judgment, Dorchester asserts that Fina failed to give proper notice of the Rhea action on a timely basis and that Fina is estopped by its silence in failing to timely inform Dorchester of the Rhea action. The sales agreement does not require that Fina give Dorchester prior notice. Nevertheless, Dorchester argues that Fina had a common law duty to do so. For the purposes of this opinion we assume, but do not decide, that Fina had a common law duty to give Dorchester proper notice of the Rhea action on a timely basis. We decline, however, to deny Fina recovery under the indemnity clause because of Fina's failure to perform its assumed common law duty to give Dorchester proper notice on a timely basis. We do so because before settlement of the Rhea claim was made, Dorchester had advised Fina that Dorchester had no liability under the indemnity clause. Therefore, notice would have been of no consequence to Dorchester. For the same reason we decline to deny Fina recovery under the indemnity clause on the ground of estoppel. We conclude that Fina's failure to speak, when it was under an assumed duty to speak, would have been of no consequence to Dorchester since before settlement of the Rhea claim Dorchester had advised Fina that Dorchester had no liability under the indemnity clause.

We reverse the trial court's judgment insofar as it denies Fina recovery against Dorchester for reasonable and necessary attorney's fees and expenses in the sum of $19,489.73. We reverse the trial court's judgment insofar as it denies Fina recovery against Dorchester for the sum of $300,-000.00 paid in settlement of Rhea's claim. We render judgment in favor of Fina and against Dorchester in the sum of $319,-489.73 together with interest thereon at the rate of ten percent (10%) per annum from the 17th day of November, 1983, the date of the trial court's judgment.[1] All costs in the trial court and in this court are taxed against Dorchester.

1. Computation of judgment rate by the consumer credit commissioner for month of November, 1983, 8 Tex.Reg. 4770 (1983), pursuant to TEX. REV.CIV.STAT. art. 5069–1.05, § 2 (Vernon Supp.1984). The contents of the Texas Register are to be judicially noticed and constitute prima facie evidence of the text of the documents published in the Register and of the fact that they are in effect on and after the date of the notation. TEX.REV.CIV.STAT.ANN. art. 6252–13a, § 4(c) (Vernon Supp.1982–1983).