**VERSON ALLSTEEL PRESS
COMPANY, Appellant,**

**v.**

**CARRIER CORPORATION & CARRIER
AIR CONDITIONING COMPANY,**
Appellee.

No. 12–84–0202–CV.

Court of Appeals of Texas,
Tyler.

Nov. 21, 1985.

Writ Refused April 30, 1986.

John Minton, Potter, Guinn, Minton & Roberts, Tyler, Patrick F. McGowan, John C. Dacus, Strasburger & Price, Dallas, for appellant.

Tracy Crawford, The Ramey Firm, Tyler, for appellee.

## ON REHEARING

PER CURIAM.

The motion for rehearing is overruled.

The opinion of the court dated October 31, 1985, is withdrawn and the following substituted therefor.

Verson Allsteel Press Company ("Verson") appeals from summary judgment rendered in favor of Carrier Corporation and Carrier Air Conditioning Company ("Carrier").

On May 29, 1974, Steven Paul Gandy, an employee of Carrier, was injured on the job while operating a press brake manufactured by Verson. Gandy received worker's compensation benefits for his injury. He filed suit against Verson for failure to provide adequate safety equipment; judgment was entered against Verson in that cause for $561,200.00, plus attorney's fees. Verson thereafter filed this action against Carrier seeking indemnification for the judgment against it.

Verson bases its claim for indemnity on certain provisions printed on the acknowledgment copy of the production order covering the press brake, to-wit:

7. WARRANTY–WARRANTY LIMITATIONS INDEMNITY

.    .    .    .    .

(c) Customer assumes and shall bear all responsibility for providing adequate and sufficient safeguards, work handling tools and safety devices, to protect fully the operator and any other users of the goods at all times in accordance with the prevailing federal, state, and local codes and industry-accepted standards. Verson shall bear no liability whatsoever for the failure of customer to order, install, or use such safeguards, work handling tools or safety devices. Customer shall establish and use, and require all persons operating the equipment to use, all proper and safe operating procedures, including but not limited to procedures set forth in any manuals or instruction sheets relating to the equipment. Customer shall not remove or modify any devices, warning sign or manual furnished with, or installed upon or attached to the goods.

.    .    .    .    .

8. INDEMNITY

Customer hereby (1) waives, releases and discharges any and all claims of any and every kind (including but not limited to injury to or death of any person or damage to property) which it may have at any time against Verson, its agents or employees, by reason of or arising out of any claimed improper design, specifications or manufacture of the goods sold hereunder, or of any claimed inadequate or insufficient safeguards or safety devices; and (2) covenants to indemnify and hold harmless Verson, its agents and employees of, from and against any and all loss, damage, expense, claims, suits or liability which Verson or any of its employees may sustain or incur at any time for or by reason of any injury to or death of any person or persons or damage to any property, arising out of any claimed improper design or manufacture of the goods sold hereunder, or of any claimed inadequate or insufficient safeguards or safety devices.

Carrier moved for summary judgment, claiming Verson's action for indemnification was barred by Article 8306, § 3, Revised Civil Statutes of Texas, 1925, ("Section 3") which reads as follows:

If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee ... against a person other than the subscriber, as provided in Section 6a, Article

8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber, his agent, servant or employee, shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber, his agent, servant or employee, have any *tort or contract liability* for damages to such other person because of such judgment or settlement, in the absence of a *written agreement expressly assuming* such liability, executed by the subscriber prior to such injury or death.

(Emphasis added.) Carrier asserted there was no express contract of indemnification in existence between itself and Verson of the type contemplated by Section 3. Carrier's motion for summary judgment was granted by the trial court.

■ On appeal, Verson seeks to establish that a material question of fact exists as to whether the conditions of sale contained in the quoted order were part of the contract between Carrier and Verson for purchase of the press brake. Verson presupposes that those provisions, if found to be part of the contract, would satisfy the requirements of Section 3. Carrier, while not conceding that those terms were included in the agreement, proceeds on the premise that even if they were, they do not constitute an express assumption of liability under Section 3. We find that the terms in question clearly constitute an express written agreement by Carrier to indemnify Verson for a successful claim by a Carrier employee arising from inadequate safety devices.

■ Carrier interprets Section 3 and caselaw as establishing minimum requirements for indemnity clauses entered into by subscribers under the compensation statute. According to Carrier, the clause must specifically state: (1) that the indemnity covers injuries to employees of the indemnitor-employer, and (2) that the indemnitor assumes liability even for the fault of the indemnitee. Carrier admits that there is a dearth of cases actually defining the phrase "expressly assuming." We think Carrier's position is excessively restrictive and unrealistic. The cases cited by Carrier deal with agreements in which a subscriber agrees to indemnify a third party for that party's negligence.[1] While those cases indicate an increasingly rigid approach in interpreting agreements by a party to assume liability for the negligence of another, *see Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818 (Tex.1972), Carrier has overstated the precedential value of those cases for its position in the matter now at hand. Texas courts have continued to follow the rule that the obligation to indemnify must be expressed in clear and unequivocal terms. *Eastman Kodak Co. v. Exxon*, 603 S.W.2d 208 (Tex.1980); *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916 (Tex.1978); *Fireman's Fund Insurance Co.*, 490 S.W.2d at 822; *Phillips Pipeline Co. v. Richardson*, 680 S.W.2d 43, 46 (Tex.App.—El Paso 1984, no writ). In *American Petrofina, Inc. v. Dorchester Gas Corp.*, 685 S.W.2d 723 (Tex.App.—Dallas 1985, writ granted), the Court reconciles the language of Section 3 with the general rules used in analyzing the sufficiency of indemnity agreements. The Court discusses in the *Eastman Kodak* decision the question of whether the "clear and unequivocal" rule applies when an indemnity agreement refers to injuries arising from the maintenance or operation of a specified instrumentality. Citing from *Eastman Kodak*, the Dallas court stated, " '[W]hen indemnity is *clearly* expressed with reference to specific premises or instrumentalities the indemnitor necessarily knows that he is assuming full responsibility for losses in connection with those particular premises or instrumentalities, regardless of whose negligence may cause

---

**1.** As between the parties now before us, it is impossible to tell from the record whether Ver-

son, Carrier or both were negligent.

the losses.'" In analyzing the sufficiency of indemnity contracts entered into by subscribers, the intent of the parties is still to be gleaned from examining all provisions of the contract in light of the circumstances surrounding its execution. *See Joe Adams & Son v. McCann Construction Co.,* 475 S.W.2d 721, 723 (Tex.1971); *Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631 (Tex.1963).

The clauses in question clearly encompass certain claims for injuries to employees and are much more specific than the language of the agreement considered in *American Petrofina, Inc.,* 685 S.W.2d at 724. In the first place, the agreement explicitly requires Carrier to provide "adequate and sufficient safeguards, work handling tools and safety devices to protect fully *the operator* and any other users of the goods." (Emphasis added.) It is difficult to imagine anyone besides a Carrier employee operating this equipment on a regular basis. Furthermore, liability is limited to specific incidents involving operation of the press brake, *i.e.,* those injuries "arising out of any claimed improper design ... or of any *claimed inadequate or insufficient safety devices.*" (Emphasis added.) Finally, the agreement provides that Carrier shall indemnify Verson for loss incurred in such cases at any time for or by reason of *"any* injury to or death of *any person* or persons ..." (Emphasis added.) BLACK'S LAW DICTIONARY 888 (4th ed. 1968) defines "implied" (in contrast to "express") as "where the intention in regard to the subject matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from ... general language." Apparently, because the category of "any person" is a general one, Carrier would have us disregard the provisions in question. When read in context of Paragraph 8 and the preceding paragraph, however, it is abundantly clear that Carrier expressly assumed responsibility for injuries to employers suffered as a result of the use of inadequate safety devices.

Our next task is to determine whether a question of fact exists as to the terms of the agreement between Verson and Carrier, i.e., did Carrier prove as a matter of law that the conditions of sale containing the subject provisions were not incorporated into the contract? Section 3 precludes indemnification by a subscriber in the absence of *"a written agreement* expressly assuming such liability *executed by the subscriber* prior to such injury or death." (Emphasis added.) As Verson points out, quoting from *Traveler's Insurance Co. v. Chicago Bridge & Iron Co.,* 442 S.W.2d 888, 895 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.), "The execution of a contract includes the performance of all acts necessary to render it complete as an instrument." A valid contract in writing may result even though only one party signs the agreement, if the other accepts by his acts, conduct, or acquiescence in the terms of the contract. *Velasquez v. Schuehle,* 562 S.W.2d 1 (Tex.Civ.App.—San Antonio 1977, no writ).

■ It is undisputed that Carrier did not sign or return the acknowledgment copy of the purchase order to Verson. The press brake that injured Gandy was actually manufactured for Anderson-Hickey Company, subject to the terms and conditions printed on the production order. When Anderson-Hickey decided not to purchase the press brake, Carrier agreed to buy it. Negotiations concerning the press brake were between Carrier and Anderson-Hickey, except that Verson confirmed the price and revised the production order naming Carrier as purchaser. In its answers to interrogatories, Verson stated that Bob Wilkerson, plant engineer of Carrier Air Conditioning Company's Tyler plant, told Chuck Crumley, sales representative for Verson, that Carrier wished to purchase the press brake and wanted "everything on it just as it was."

Carrier acknowledges receipt of a copy of the production order which Verson forwarded with a letter advising Carrier of its obligation to provide point of operation guards and referring Carrier to the terms printed on the order. It is undisputed that

Carrier accepted delivery of the press brake and placed it in operation.

Verson offers three theories by which the terms and conditions could have become part of the agreement between Carrier and Verson:

(1) By express acceptance of the terms and conditions of the offer to Anderson-Hickey;

(2) By course of dealing as set out in TEX. BUS. & COMM. CODE ANN. § 1.205 (Vernon 1968); or

(3) By acceptance of confirmation of terms as set out in TEX. BUS. & COMM. CODE ANN. § 2.207 (Vernon 1968).

We decline to consider the validity of each theory, but find that the summary judgment evidence indicates a material question of fact exists as to whether Paragraphs 7 and 8 of the Conditions of Sale were part of the agreement between Verson and Carrier for purchase of the press brake.

The summary judgment is reversed, and the cause remanded to the trial court for trial on the merits.