FAULK MANAGEMENT SERVICES, Appellant,

v.

LUFKIN INDUSTRIES, INC., Appellee.

No. 09–94–042 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 9, 1995.

Decided Aug. 31, 1995.

Rehearing Overruled Sept. 29, 1995.

G. Mark Creighton, Ft. Worth, for appellant.

Clay M. White, Sammons & Parker, Tyler, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

Faulk Management Services initiated this action for declaratory judgment in which it sought a court ruling that it has no duty to indemnify and defend Lufkin Industries, Inc., pursuant to a written agreement between the parties. Both parties filed motions for summary judgment. The trial court granted Lufkin's motion and entered judgment declaring that the contract requires Faulk to indemnify and defend Lufkin in an underlying suit styled No. 26,473–92–12, *Alta V. Harrison v. Lufkin Industries, Inc.* Faulk's two points of error aver: 1) the trial court erred in granting Lufkin's motion for summary judgment, and 2) the trial court erred in denying Faulk's motion for summary judgment.

Faulk provides janitorial services. Alta V. Harrison is Faulk's employee. She sustained an on-the-job injury while working on Lufkin's premises. Harrison sued Lufkin, alleging Lufkin was negligent because it failed to provide a safe place to work, failed to secure, replace, or remove a defective gate which fell on top of her, failed to inspect the workplace, and failed to warn of hidden danger. Lufkin's demand for defense and indemnity is based upon a contract between Faulk and

Lufkin for "blanket purchase order to cover all janitorial services and supplies from February 2, 1990 through February 1, 1991...." This agreement includes the following:

### HOLD HARMLESS AGREEMENT

LUFKIN INDUSTRIES, INC. will exercise no control or right of control over the employees or details of the work. Contractor is to furnish his own tools and Lufkin Industries is interested only in the final results of the completed contract. Contractor is doing the work under contract and is an independent contractor and not an employee of the company.

By signing the below statement, the seller agrees to protect, defend, indemnify, and save harmless Lufkin Industries, Inc. against loss, damage, or expense by reason of any suits, claims, demands, or judgment and causes of action caused by the seller, its employees, agents or any subcontractor arising out of or in consequence of the performance of this contract.

It is the intention of the Seller and/or Contractor to indemnify Lufkin Industries, Inc. even in the event that any such claims, demands, actions or liability arises in whole or in part from warranties, express or implied, defects in materials, workmanship or design, condition of property or its premises and/or negligence of Lufkin Industries, Inc. or any other fault claims as a basis of liability for Lufkin Industries, Inc.

■ A party seeking indemnity for its own negligence must express that intent in specific terms within the four corners of the contract. *HL & P Co. v. Atchison, Topeka, & Santa Fe Ry.*, 890 S.W.2d 455, 457–459 (Tex.1994); *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987). The issue is a question of law. *Id.* at 708; *Fisk Elec. v. Constructors & Associates*, 888 S.W.2d 813 (Tex.1994). Appellant contends the agreement fails to meet the express negligence test because the part of the agreement which applies to "Seller" is inoperable because appellant provided services rather than goods. This argument is without merit, as there are clearly two parties to the agreement, Faulk and Lufkin, and the indemnify-ing party, whether called Seller or Contractor, is undeniably Faulk.

■ Appellant likewise maintains the agreement fails the express negligence test because the second paragraph of the agreement provides for indemnification only to "suits, claims, demands, or judgment" which are "caused by the seller," and the injury was caused by Lufkin, not by Faulk. Read in its entirety and in context, the second paragraph expresses an intent that Faulk defend and indemnify Lufkin against loss, damage or expense, and against causes of action. The third paragraph does not limit indemnification to claims "caused by" Faulk. We reject appellant's argument that the third paragraph does not include personal injury claims, as it clearly covers claims arising from negligence. We hold the terms of the agreement, "[i]t is the intention of the Seller [Faulk] . . . to indemnify [Lufkin] even in the event that . . . liability arises in whole or in part from . . . condition of property or its premises and/or negligence of [Lufkin]" meet the express negligence test. Furthermore, the second and third paragraphs do not limit each other, but, read together, provide for both defense and indemnity for liability arising out of performance of the contract even if wholly caused by Lufkin's negligence.

■ Appellant also contends that the agreement is void because it fails to meet the "workers compensation bar" provided by the statutory law in effect at the time of the accident. TEX.REV.CIV.STAT.ANN. art. 8306 § 3(d) (Vernon Supp.1989) (repealed). Article 8306 § 3(d) provided that if a personal injury action by an employee against a third party resulted in judgment or settlement, no subscriber shall have any liability to reimburse or hold harmless "in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death." Acts 1983, 68th Leg., R.S., ch. 131, 1983 Tex.Gen.Laws 613, *repealed, see now* TEX.LABOR CODE ANN. § 417.004 (Vernon Pamph.1995). Appellant argues the agreement does not provide an express description of liability for injuries to employees, citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 7–9 (Tex.1990), and *Verson*

*Allsteel Press Co. v. Carrier Corp.*, 718 S.W.2d 300, 301–302 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). The agreement in this case is very similar to the agreements in *Enserch* and *Verson*, both of which were held sufficient to meet the statute. In *Enserch* the term "persons" included employees of the indemnitor. In *Verson* the court held the statute did not require the indemnity agreement to include language which specifically referred to the indemnitor's employees. Faulk agreed to protect against liability arising in consequence of the performance of the contract, even if Lufkin was wholly negligent. We find no reasonable basis upon which to distinguish *Enserch* from the case before us. We overrule the points of error and affirm the judgment.

AFFIRMED.

STOVER, Justice, dissenting.

I respectfully dissent. The indemnity provision in the contract between Lufkin Industries, Inc. and Faulk Management Services does not meet the fair notice requirement as set out by the Texas Supreme Court in *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex.1993). In *Dresser*, the court stated that the fair notice requirement, as applied to indemnity agreements, includes the express negligence doctrine and the conspicuousness requirement. *Dresser*, 853 S.W.2d at 508. The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. *Id.; Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). The conspicuousness requirement mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *See Dresser*, 853 S.W.2d at 508; quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex.1972). The question of compliance with both prongs of the fair notice requirement is a question of law for the court. *Dresser*, 853 S.W.2d at 509.[1]

The language contained in the middle and last paragraphs of the "Hold Harmless Agreement" does not satisfy the express negligence rule. The middle paragraph is limited to claims caused by Faulk. However, the injured employee, Harrison, makes no claim that Faulk caused any injury; the record is simply devoid of any evidence of Faulk's being the cause of the injury to Harrison. Consequently, the middle paragraph has no application to the facts at hand, since it restricts the indemnity obligation to those suits, claims, damages, etc., caused by Faulk. Thus, the second paragraph of the agreement contains no express language indemnifying Lufkin from its own negligence, and, consequently, does not comply with the express negligence rule.

That leaves the final paragraph as the only source of indemnity relief for Lufkin Industries. The final paragraph begins with words which are merely precatory. The phrase, "It is the intention of the Seller [Faulk] and/or Contractor to indemnify Lufkin," is a recital in the contract and indicates a mere *intent* to do something; the phrase does not carry with it an obligation to indemnify Lufkin. Moreover, although the claims listed as being subject to indemnification in the third paragraph include the general category of negligence, the list does not specify "personal injury." The lack of specificity is fatal to the indemnity contract herein, as it was in *Houston Lighting & Power Company v. Atchison, Topeka & Santa Fe Railway Company*, 890 S.W.2d 455, 459 (Tex.1994). In that case, the Texas Supreme Court required that the indemnity contract specify and expressly state the intent to cover strict liability claims. I would hold in the instant case that the failure to specifically list personal injury as a covered claim precludes indemnity for the personal injury claim at issue herein. *Ard v. Gemini Exploration Co.*, 894 S.W.2d 11, 14–15 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that "the failure to specifically list personal injury as a covered claim precludes indemnity for the personal injury claim."). The scope of the agreement must cover the type of claim sued upon; in this instance, it does

---

1. Appellant did not raise the conspicuousness requirement in the court below. Therefore, any issue as to conspicuousness plays no role in this dissent.

not. The last paragraph, like the second, fails to satisfy the express negligence rule.

In addition, although the summary judgment requires that Faulk indemnify *and* defend Lufkin, the contract does not require both indemnification *and* defense in the third paragraph, which is the only indemnification applicable to Lufkin. Since the court's judgment orders Faulk to do something which the contract does not require, the judgment should be reversed on those grounds alone.

Indemnity contracts, such as the one in this case, are troubling. In that respect, they are similar to "Mary Carter agreements," which were, in fact, so problematic that the Texas Supreme Court in *Elbaor v. Smith*, 845 S.W.2d 240 (Tex.1992) declared them void as against public policy. Mary Carter agreements "promote rather than discourage further litigation" and "skew the trial process, mislead the jury, promote unethical collusion among nominal adversaries, and create the likelihood that a less culpable defendant will be hit with the full judgment. The bottom line is that our public policy favoring fair trials outweighs our public policy favoring partial settlements." *Id.* at 250. Although that particular language was applied to Mary Carter agreements by *Elbaor*, it also describes some of the troublesome aspects of indemnity agreements. Like Mary Carter agreements, the type of indemnity agreement in this case has the potential, and, indeed, sometimes does, inflict procedural and substantive damage upon our adversarial system.

Many indemnity agreements operate in a manner similar to the one at issue in this case. The employer agrees to indemnify a third party in situations where, for example, the employee of the employer sustains an injury which arises out of the employee's performance of the contract on behalf of the employer. The employer carries workers' compensation insurance, an act favored by public policy, since it affords coverage for an employee injured on the job. Benefit also accrues to the employer, since employers are protected by the workers' compensation bar. Thus, public policy favors the workers' compensation coverage for the mutual protection of employers and employees.

Public policy also favors the subrogation rights of the workers' compensation carrier to recover workers' compensation benefits from the third-party tort-feasor. For that reason, Texas law gives the workers' compensation carrier a subrogation right/lien against monies recovered from the third-party tort-feasor. TEX.LAB.CODE ANN. § 417.001 (Vernon Supp.1995). The agreement between the carrier and the employer works to the benefit of the employee, employer, and the carrier. However, with the addition of an indemnity agreement between the employer and a third-party, the alignments become less clear. In a sense, the employer enters into conflicting agreements. The agreement with the workers' compensation carrier obligates the employer to cooperate fully with the carrier to recover the workers' compensation lien on the judgment against the third-party, while the indemnity agreement with the third-party tort-feasor requires the employer to indemnify and, in many cases, defend the third-party in the employee's suit against the third-party. Because of the conflicting purposes and obligations, the employer is in a dilemma.

In sum, an indemnity provision such as this masks the real party in interest by allowing the third-party tort-feasor to be the named defendant while, in reality, the case is being defended by the employer. This creates problems with the trial process, misleads the jury, and may even promote unethical collusion.

In the case at bar, Harrison's employer, Faulk, will be required to defend Lufkin, the third-party tort-feasor, against the negligence claim of Faulk's injured employee. By virtue of the indemnity contract, which is in many ways an adhesion contract, Faulk will be required to indemnify and defend Lufkin in the suit by Harrison against Lufkin, even though Faulk is not alleged to be at fault. The potential for overreaching and abuse in these types of contracts is of such magnitude that Texas courts should consider them as violative of public policy.

Because the indemnity agreement herein failed to meet the requirements of the express negligence doctrine, as set out in

*Dresser* and *Ethyl,* and because the judgment ordered Faulk to defend the suit against Lufkin, which was not a requirement of the contract, I would reverse and render judgment in favor of appellant. The contract in question does not require appellant to indemnify or defend appellee in the suit styled *Alta V. Harrison v. Lufkin Industries, Inc.,* cause No. 26,473–92–12, in the District Court of Angelina County, Texas. I reiterate my concern that indemnity agreements such as the one in this case are problematic and that they raise important public policy questions.