### PEEK v. PARKER et al.

#### No. 14935.

Court of Civil Appeals of Texas.
Fort Worth.
April 2, 1948.

Rehearing Denied April 30, 1948.

Strasburger, Price, Holland, Kelton & Miller and Royal H. Brin, Jr., all of Dallas, for appellant.

C. O. McMillan and Sam Cleveland, both of Stephenville, for appellees.

McDONALD, Chief Justice.

Jessie C. Parker and his young son were killed in a collision of two trucks. Judgment was awarded on a jury verdict to J. B. Parker, individually and as next friend of William Baldwin, non compos mentis, and to Mrs. Pearl Strafello, as the surviving beneficiaries of the deceased persons.

Appellant Peek, the defendant below and the driver of one of the trucks, appeals, relying on three points of error.

J. B. Parker was the father of Jessie C. Parker. Under the first point of error it is claimed that the evidence did not show any pecuniary loss by J. B. Parker as a result of the death of the son, and under the second point it is claimed that if he suffered any loss the allowance of the sum of $2,675.83 therefor in the verdict and judgment was excessive. The gist of appellant's claim is that appellee J. B. Parker, a man about sixty years of age, was making his own living at the time of his son's death, that the son was not contributing to the support of the father, and that the evidence as to probability of support in the future was too speculative to serve as a basis for a recovery of damages.

When the evidence is viewed in the light most favorable to the verdict, it shows that J. B. Parker was sixty years of age and had a life expectancy of fourteen years at the time of his son's death. The son was about thirty-five years of age. His mother, and his first wife, the mother of the child who was killed, both had died some years before. In 1942 the son was living in California. He paid his father's way to California, and for about three years the father lived with the son, paying for neither room nor board, although he had a job. During that time the son's wages were about $70. per week. The son told his wife during that time that his father took care of him while he was young, and that he knew that it was time for him to take care of his father. He also told his wife that he was going to buy a farm in Texas, and have his father live with him. Later, the son and his wife were divorced, and the son was unmarried at the time of his death. The father had another child, a daughter, but the evidence does not show that she contributed materially to her father's support. The father did not own any property, but at the time of the son's death the father was still living in California, and at such time seems to have been self-supporting. The son had returned to Texas, where he had lived before going to California. At the time of his death, the son owned a small truck, and was earning from thirty-five to fifty cents per hour, eight or nine hours per day. At that time it appears that the father, still in California, was perhaps earning as much or more than was the son. Several witnesses testified to having heard the son declare that he wanted to return to California and take care of his father, that his father was getting old and would some day be dependent on him. He said that he would like to get a farm, and have his father live with him and his boy.

Appellant appears to contend that in order to warrant a recovery the evidence must show that the son was actually contributing to his father's support at the time of his death, and that a judgment in favor of the father cannot be upheld where it is shown that the father was earning his own living at the time the son lost his life.

"The measure of damages in an action by a parent for the death of an adult child is the pecuniary loss actually sustained by the plaintiff; that is, the parent may recover the present value of such amount as he may be able to show that the child, had he lived, would probably have contributed to the parent's support. * * * If it were possible to determine the exact amount which the child, had he lived, would have contributed, the present worth of that amount, of course, would measure the recovery.

" 'That being impossible, in a case of this kind, the deceased being an adult, and the parents having no legal right or demand to the son's earning or to contributions from him the amount of loss sustained is to be ascertained from all the circumstances, relations, and conditions of the parties.' " (Citing Francis v. Atchison, T. & S. F. Ry. Co., 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114.) 33 Tex.Jur. 154.

In order to show how much the adult child might have contributed to his parent's support, "* * * the plaintiff is permitted to show the character of the child, his affection and disposition toward his father and mother, his acts of assistance and donations, his earning capacity at the time of his death, his probable future earning capacity, the amount of his property, his age and expectancy, and like mat-

ters. In short, any relevant testimony is admissible that tends to show the will and ability of the child to confer benefit on the parent." 33 Tex.Jur. 200, 201.

■ There is testimony in the present case showing that the father had suffered an impairment in health, and that it was reasonably probable that he would soon be unable to support himself. Appellant argues that the record shows that in the years past the father had assisted the son to a greater extent than the son had supported the father. Even if this were true, it is not enough by itself to justify us in overturning the verdict of the jury. From the evidence favorable to the verdict, it appears that the father is now getting old, that he will soon be physically unable to hold a job, and that his son, had he lived, would have contributed to his father's support after the latter had become unable to make his own way.

■ Nor can we see that the verdict is excessive. If the son had done no more than provide his father with room and board, as he did for several years in California, the value of it would soon have amounted to the sum found in the verdict.

The statement of facts shows the following question addressed by plaintiffs' counsel to defendant during cross-examination of the latter, the defendant's reply, the objection made by his counsel, and the ruling of the court with respect thereto:

"Q. By the way, I believe you are under felony indictment in this court? A. Yes.

"Mr. Taylor: If the Court please, we are going to make a motion for a mistrial; it is irrevelant, immaterial and highly improper.

"The Court: I sustain the objection and instruct the jury not to consider it for any purpose.

"Mr. Taylor: We except to the Court's action in overruling motion for a mistrial."

Under the third point it is claimed that this presents reversible error.

■ It is settled by many decisions that it is improper to undertake to impeach a witness in a civil suit by showing that he has been indicted.

"The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, with an offense involving moral turpitude, and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness. Kennedy v. International-Great Northern R. Co. (Tex.Com.App.) 1 S.W.2d 581. Otherwise, in the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity, and should not be extended to his general moral character. Missouri, K. & T. R. Co. v. Creason, 101 Tex. 335, 107 S.W. 527, and authorities there cited." Texas & N. O. Ry. Co. v. Parry, Tex.Com. App., 12 S.W.2d 997, 1001. See also Kennedy v. International-Great Northern R. Co., Tex.Com.App., 1 S.W.2d 581.

■ Appellee argues that the evidence was rendered admissible by way of rebuttal, because defendant had theretofore been questioned by his own counsel on direct examination concerning the fact that the sheriff and highway patrolman talked to defendant after the collision, but that, although plaintiff had offered evidence to show that the defendant was intoxicated, the officers did not arrest him or put him in jail. Defendant's testimony that the officers did not arrest him or put him in jail may have been designed to persuade the jury that he was not drunk, but it did not justify the broad question inquiring if he was under felony indictment.

Appellee argues that the error, if any, was rendered harmless by the instruction of the court to the jury not to consider the matter. Referring to evidence which had been improperly admitted, the court said in Bain Peanut Co. of Texas v. Pinson, Tex.Com.App., 294 S.W. 536, 537:

"This testimony was in its nature prejudicial. Its effect was to impeach the business integrity of defendant. That it was calculated to prejudice there can be no doubt. Rule 62a was not promulgated for the purpose of permitting a litigant to

wrongfully prejudice the rights of his adversary and profit by his wrongful act by casting upon such adversary the burden of showing that harm resulted, and should not be construed as having this effect. Where improper testimony in its nature calculated to prejudice is permitted, the appellate court must presume that harm resulted therefrom, unless it affirmatively appears from the record that it did not. The same rule of law applies to the introduction of improper evidence over objection as is applicable to improper remarks of counsel in argument or misconduct of the jury."

In recent years the appellate courts have refused in many cases to reverse for improper argument of counsel, either where the trial court instructed the jury not to consider the argument, or where there was no objection to the argument and no request for such an instruction from the court. The courts have continued, however, to declare that there is reversible error where the argument is so prejudicial or inflammatory that an instruction from the court would not cure the error. Ramirez v. Acker, 134 Tex. 647, 138 S.W. 2d 1054; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264.

■ We have found no decision declaring it to be harmless error to undertake to impeach a witness by showing an indictment against him. The verdict in the present case is reasonable as to amount, and there is ample evidence to support the findings relating to liability. But it must also be said that the evidence would have supported contrary findings, both as to liability and as to damages. Evidence that a person is under a felony indictment is from its nature calculated to be damaging. We do not believe that the error was harmless, nor do we believe that an instruction from the court would have removed the harm. Throughout their consideration of the case the jury could not have forgotten that the defendant had been indicted as a felon, and it is reasonably probable that they considered such fact in arriving at their verdict. To hold otherwise, we believe, would set a precedent that would invite commission of the same error in similar situations. In

support of our views we cite the following cases in addition to those above referred to: White House Lumber Co. v. Denny, Tex.Civ.App., 94 S.W.2d 241, writ dismissed; Cooper v. Irvin, Tex.Civ.App., 110 S.W.2d 1226; Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W. 2d 782, writ refused, want of merit; Associated Employers Lloyds v. Tullos, Tex. Civ.App., 197 S.W.2d 210, writ refused, no reversible error; Price v. Pelton, Tex. Civ.App., 199 S.W.2d 249.

Reversed and remanded.