**L. A. GREEN, Individually and Green & Flannagan, a Partnership, Appellants,**

v.

**Manuel HALE, Appellee.**

**No. 1212.**

Court of Civil Appeals of Texas, Tyler.

Nov. 15, 1979.

Rehearing Denied Dec. 6, 1979.

Rex A. Nichols, Nichols & Parker, Longview, Gordon R. Wellborn, Wellborn, Houston, Bailey & Perry, Henderson, Mike Hatchell, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, for appellants.

Carl R. Roth, Jones, Jones & Baldwin, Marshall, for appellee.

SUMMERS, Chief Justice.

This suit was brought by Manuel Hale, plaintiff, under both the Wrongful Death Act (Article 4671 et seq.) [1] and the Survival Statute (Article 5525) against L. A. Green, individually, and Green & Flannagan, a partnership, defendants, for damages resulting from the death of plaintiff's thirteen-year-old son, Ronzell Hale, in an automobile accident July 28, 1975, allegedly caused by the negligence of defendant, L. A. Green.

The case was tried to a jury which answered all liability issues favorable to the plaintiff and exonerated the deceased of all contributory negligence; these issues are not contested on appeal.

Damages were assessed by the jury in the sum of $9,500.00, being $4,500.00 for the plaintiff's pecuniary loss of services and

---

1. This and all other statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

contributions and $5,000.00 for mental anguish suffered by Ronzell before his death as a result of the occurrence in question. In accordance with the jury's verdict, the trial court entered judgment for the plaintiff in the amount of $9,500.00. It is from this adverse judgment that defendants have appealed attacking the damage awards. We affirm.

L. A. Green is a member of the partnership of Green & Flannagan which operates some 300 to 400 acres of watermelon fields in Rusk County. During watermelon harvest season, the partnership employed local youth ranging in age from 12 to 18 years to gather melons for market. The deceased, Ronzell Hale, was one of those employees, and, in 1975, he was working his second summer for Green & Flannagan. On each work day, it was customary for the employer to take the employees into a nearby town for lunch, and this is what was occurring on July 28, 1975, when the accident happened. Approximately 14 young boys (12 in the back and 2 in the cab) climbed into L. A. Green's three-quarter-ton pickup for the noon ride to the Oak Hill Store for lunch on the day in question. Ronzell was one of the boys in the rear of the truck, standing near the tailgate. The truck proceeded from a sand road in the watermelon fields onto an oil top county road, and headed toward town. After a short ride on the oil top road, a hat worn by Johnny Jackson blew off in the wind, and the boys called to Mr. Green to stop so it could be retrieved. Green brought the truck to a stop, a distance estimated to be some 50 to 100 yards from where the hat was lying on the left side of the road. Mr. Green could see the hat in his left hand mirror, but his view of the boys in the rear of the truck was obscured. James Ayers, Jr., a witness, testified that after the truck had stopped, Ronzell shouted "wait a minute, I will go get it," and was on the tailgate in the process of getting off the back of the truck when Mr. Green put the truck in gear and started backing up; that Ronzell fell off, slipping under the truck, and was run over after Mr. Green had gone 3 or 4 feet. It is undisputed that Mr. Green did not give any warning of

his intention to back up. Another witness, Kelly Hunley, testified that just as Mr. Green started backing up he saw Ronzell "going down," that he saw his head and one hand holding on to the tailgate and that his feet and body were already out of the truck, and that "from the time he (Mr. Green) first started back until after the accident was over" he traveled not more than ten feet. Two of defendants' witnesses, Johnny Jackson and Donnie Roy Johnson (two brothers), testified that Mr. Green had backed up about 25 yards at a speed of 15 to 20 miles per hour when they saw Ronzell, in the process of getting out of the truck, put one foot over the rear bumper, then slipped and fell under the pickup. Mr. Green testified that he had backed up half way (35 to 50 yards down the road at a medium speed when he felt a "bump" and put on his brakes to stop before he heard anyone holler. Green brought his vehicle to a stop before the front wheels reached Ronzell's body. Ronzell was found under the vehicle, between the front and rear wheels, where he had been killed by the right rear wheel of the truck passing over his head.

Defendants' appeal is predicated upon seven (7) points of error alleging that the trial court erred (1) in overruling defendants' motions for instructed verdict and for judgment non obstante veredicto because there was no evidence to support the jury's answers to Special Issues Nos. 10 and 11; (2) in overruling defendants' motion for judgment in disregard of Special Issue No. 10 and (3) in overruling defendants' motion in disregard of Special Issue No. 11, because there was no evidence to support the jury's answers to such issues; (4) in failing to sustain defendants' amended motion for a new trial because the jury's answer to Special Issue No. 10 and (5) because the jury's answer to Special Issue No. 11 were not supported by factually sufficient evidence and/or was against the great weight and preponderance of the evidence; (6) in failing to grant defendants' amended motion for new trial on the ground that the damages found by the jury in Special Issue No. 10 are excessive and (7) on the ground that

the damages found by the jury in Special Issue No. 11 are excessive.

In determining a "no evidence" point, which is a question of law, we consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and we must reject all evidence and inferences which are contrary to the finding. *Garza v. Alviar*, 395 S.W.2d 821, 826 (Tex.1965); *Biggers v. Continental Bus Systems, Inc.*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914).

In determining an "insufficient evidence" point, which is a question of fact, we consider and weigh all the evidence in the case to determine whether the evidence is factually insufficient to support a finding of a vital fact or the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust and that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, supra, *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

The amount of damages to which a party is entitled is primarily and peculiarly within the province of the jury; and in the absence of a showing that passion, prejudice or other improper motive influenced the jury, the amount assessed by them will not be set aside as excessive. In determining whether or not a verdict is excessive, the evidence must be considered in a light most favorable to the award. *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 744 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.); *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830, 834 (Tex. Civ.App.—Waco 1960, writ ref'd n. r. e.); *Green v. Rudsenske*, 320 S.W.2d 228, 235 (Tex.Civ.App.—San Antonio 1959, no writ).

The appellant has the burden of establishing that the jury's evaluation of the damages was erroneous. *City of Austin v. Selter*, 415 S.W.2d 489, 502 (Tex.Civ.App.— Austin 1967, writ ref'd n. r. e.); *Evans v. Rush*, 254 S.W.2d 799, 802 (Tex.Civ.App.— Amarillo 1952, no writ); *City of Dallas v. Hutchins*, 226 S.W.2d 155, 160–161 (Tex.Civ. App.—Amarillo 1949, writ ref'd n. r. e.).

The following governing principles should be considered in dealing with the problem of excessive damages:

(1) That an appellate court should not substitute its judgment for that of the jury;

(2) That in the absence of an affirmative showing of bias or prejudice the Courts of Civil Appeals will give every intendment to the evidence supporting the verdict;

(3) That the judgment of the jury is as good as the Court and it should prevail unless it appears that the verdict is influenced by passion or prejudice and is not the result of honest convictions. *City of Austin v. Selter*, supra, at 502; *Texas Consolidated Transportation Co. v. Eubanks*, supra at 833–34.

### The Award for Loss of Services and Contributions

Special Issue No. 10 submitted the question of the amount of damages for loss of services and contributions under the wrongful death portion of this suit. The jury awarded the plaintiff the sum of $4,500.00 for this loss.

It is well settled that a parent is entitled to recover as actual damages for the death of a minor child only the pecuniary value of the child's services until he reaches his majority and reasonably anticipated contributions thereafter, less expenses of the child's support, education and maintenance. *Jasper County Lumber Company v. McMillan*, 188 S.W.2d 731, 732 (Tex. Civ.App.—Beaumont 1945, writ ref'd); *Banker v. McLaughlin*, 200 S.W.2d 699, 702 (Tex.Civ.App.—Beaumont 1947), aff'd, 46 Tex. 434, 208 S.W.2d 843 (Tex.1948).

The law is also well settled that the evidence in this type of case from the very nature of things cannot furnish the measure of damages with the certainty and accuracy with which it may be done in other

cases and, therefore, the question of damages must be left largely to the discretion of the jury. *Jasper County Lumber Company v. McMillan*, supra, at 733; *Banker v. McLaughlin*, supra, at 702; *Riojas v. Riojas*, 289 S.W.2d 802, 805 (Tex.Civ.App.—Fort Worth 1956, no writ).

A parent may show the character of his child, his affection and disposition toward his parents, his acts of assistance and donations, his earning capacity at the time of his death, his probable future earning capacity, his age and life expectancy and like matters. *Peek v. Parker*, 210 S.W.2d 619, 620 (Tex.Civ.App.—Fort Worth 1948, no writ).

The following quotation from the early Supreme Court case of *Brunswig v. White*, 70 Tex. 504, 8 S.W. 85, 89–90 (1888) is informative:

> "Where the testimony shows the bodily health and strength; the sprightliness or want of it, of mind; the aptitude and willingness to be useful in performing services; the modes such faculties are exercised as in useful labor or otherwise; and when from the age or undeveloped state of the child in the estimate of value of the services until majority would be matter of opinion, in which no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value,—then, upon such testimony, the sound discretion of the jury can be relied on to determine the value, without any witness naming a sum. (3) As the age of the child increases, and his faculties develop, testimony to actual services can and should be produced, giving a wider basis of induction to the jury in calculating the damages from the loss. And (4) the circumstances of the parents suing, as in this case, often become necessary as evidence; not as a basis for increasing or diminishing the amount, but to illustrate the acts of the child as useful or otherwise."

The evidence reveals that Ronzell Hale, the deceased child, was 13 years of age at the time of his death, having been born July 31, 1961; that he was the youngest of five children and was 11 years old when his mother died of cancer in 1972; that his father testified he was a good worker and an extra-ordinary boy; that he grew up working in the hay meadows and cutting pulpwood with his father and brother when he was only eight or nine years old; that he was "extra good" around the house and didn't have to be pushed about doing his chores or helping out; that when he was just 12 years old he went to work in the summer for the defendants loading watermelons; and that after school he sold papers in the afternoon.

The evidence further reveals that, after Ronzell's mother died, the duties of maintaining a household, formerly done by his mother, became primarily Ronzell's responsibility; that he then regularly prepared meals for the family, helped with the dishes, chopping the wood, feeding the hogs and doing the laundry; that he did general housework, sweeping floors and that kind of thing; that it was his job to cut and keep the yard clean; that Ronzell did well in school, was making "extra good grades" and never had to be pushed to get his homework out.

The evidence further shows that Ronzell was working his second summer in the watermelon fields and was earning $1.85 an hour; that "some of the bigger boys got more than that, two something"; that the amount they made was according to what size they were and how much they did; that the boys worked six and sometimes seven days a week and sometimes more than eight hours a day; that most of the boys would average "18 or 20" dollars a day and some were getting more than that, up to $25.00 a day; that by the time of trial the wage paid was $2.00 to $2.75 an hour and the earnings ranged from $20.00 to $30.00 per day; and that Ronzell contributed the biggest part of his earnings to his father to help pay family expenses. There was also testimony that, in reasonable probability, Ronzell would have been able to

earn at least $4,800.00 in the four-year period from the date of his death until his eighteenth birthday.

■ In light of the evidence adduced, we have concluded that there is evidence of probative force to support the jury's answer to Special Issue No. 10.

We do not agree with defendant's contention that the evidence is legally insufficient because of the answers elicited from Mr. Hale on cross-examination that "actually it cost more to raise one than you get out of it" and "No. I didn't lose any money." Such answers do not conclusively constitute a disclaimer by plaintiff of any recovery for loss of services and contributions; they were simply evidence which the jury could consider along with all other evidence in determining whether any pecuniary loss was suffered, and if so, how great a loss was suffered.

After a review of the entire record, we cannot agree with defendants' contention that the jury's answer to Special Issue No. 10 was not supported by factually sufficient evidence or that the jury's answer to Special Issue No. 10 was against the great weight and preponderance of the evidence. Point 1 (insofar as it relates to Special Issue No. 10), Point 2 and Point 4 are overruled.

By their 6th point, defendants contend that the damages of $4,500.00 found by the jury in answer to Special Issue No. 10 for loss of services and contributions is excessive. We believe that the evidence supports the finding of the jury and that the sum of $4,500.00 awarded as damages is not excessive. Defendants' Point 6 is overruled.

### The Award for Mental Anguish

Special Issue No. 11 submitted the claim of the plaintiff, as representative of the estate of the deceased, for Ronzell's mental anguish experienced before his death. The jury awarded the sum of $ 5,000.00 for this element of damage. It is plaintiff's contention that the circumstances surrounding Ronzell's death compel an inference that he was consciously aware of impending disaster prior to the lethal blow being struck by the wheel of the truck and therefore is entitled to compensation for the accompanying mental anguish during that period of consciousness. Defendants assert that the jury's award is not supported by the evidence, tested either by legal or factual criteria and that there is no evidence that, during the interval between the time the deceased slipped and was struck by the wheel, he experienced any fear, fright, contemplation of death, or any other form of mental suffering or anguish.

In *Jenkins v. Hennigan*, 298 S.W.2d 905, 911 (Tex.Civ.App.—Beaumont 1957, writ ref'd n. r. e.), it was stated: "Consciousness of approaching death is a proper element to be considered in evaluating mental suffering."

■ It is well established that the existence of conscious pain and suffering may be established by circumstantial evidence, and further that such suffering may be inferred or presumed as a consequence of severe injuries, as illustrated in drowning cases such as *City of Austin v. Selter*, supra at 501–502; and *Mitchell v. Akers*, 401 S.W. 2d 907, 912 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.), and also in cases of death due to burning such as *Sharpe v. Munoz*, 256 S.W.2d 890, 892 (Tex.Civ.App.—San Antonio 1953, writ ref'd n. r. e.).

Texas Jurisprudence states the applicable rule as follows:

"It is not necessary that the existence of physical or mental suffering be proved by direct evidence; such suffering may be presumed in cases where it is the natural consequence of the injury of which the plaintiff complains. Where serious bodily injury has been inflicted, some degree of physical and mental suffering is the necessary result; and in such cases the jury are [sic] authorized, without the direct proof of such suffering, to consider the pain both of body and of mind in assessing the amount of damages." 17 Tex. Jur.2d 312, Damages, Sec. 252.

The evidence concerning the cause and manner of Ronzell's death has been re-

viewed above. We find testimony in the record that Ronzell was on the tailgate in the process of getting off the back of the truck when Mr. Green put the truck in gear and started backing up; that Ronzell fell off and was run over after Mr. Green had gone 3 or 4 feet; that as Mr. Green started backing, one witness saw Ronzell "going down," his head and one hand holding to the tailgate and his feet and body already out of the truck; that from the time Mr. Green started backing until after the accident was over, he traveled not more than ten feet; that Mr. Green felt a bump, put on his brakes and brought his vehicle to a stop before the front wheels reached Ronzell's body; and that Ronzell was found under the vehicle between the front and rear wheels, killed by the right rear wheel of the truck passing over his head. A boy of Ronzell's age and intelligence certainly realized the serious predicament he was in from the moment he felt the backward movement of the truck and became unable to hold on to the tailgate, and the inevitability of being crushed by the wheel of the truck, must have become apparent to him as he fell to the ground behind the truck.

Under the applicable law, the jury could draw a reasonable inference of terror and mental anguish which occupied the last moments of Ronzell's life for their finding and award. Regardless of how brief in duration, a tremendous amount of fear can be inferred from the surrounding circumstances, and it was the duty of the jury to translate that moment of mental anguish into an appropriate monetary award.

Considering only that evidence, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and rejecting all evidence and inferences contrary to the finding, we have concluded that there is evidence of probative force to support the jury's answer to Special Issue No. 11. Furthermore, after a review of the entire record, we cannot agree with defendants' contention that the jury's answer to Special Issue No. 11 was not supported by factually sufficient evidence or that the jury's answer to Special

Issue No. 11 was against the great weight and preponderance of the evidence. Point 1 (insofar as it relates to Special Issue No. 11), Point 3 and Point 5 are overruled.

We believe that the damages of $5,000.00 awarded by the jury in answer to Special Issue No. 11 for mental anguish is supported by the evidence and is not excessive. Point 7 is overruled.

We find nothing in the record to indicate that the jury was influenced by passion, prejudice, or other improper motive in assessing the damages found in either Special Issue No. 10 or Special Issue No. 11 herein.

Having considered all of defendants' points of error and believing them to be without merit, the same are overruled.

The judgment of the trial court is affirmed.